**W. T. GRANT COMPANY, Appellant,**

v.

**INDIAN TRAIL TRADING POST, INC., and F. W. Woolworth Co., Appellee.**

Court of Appeals of Kentucky.

May 5, 1967.

Rehearing Denied Feb. 16, 1968.

Leo T. Wolford, Eugene B. Cochran, Louisville, Robert J. Kelly, New York City, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

James W. Henricks, Marshall, Cochran, Heyburn & Wells, Louisville, Robert E. Friedrich, New York City, M. Brooks Senn, R. Lee Blackwell, Bullitt, Dawson & Tarrant, Louisville, for appellee.

OSBORNE, Judge.

The issues tried by the circuit court in this proceeding arose out of the consolidation of two actions. One, an action by the Indian Trail Trading Post, Inc., v. W. T. Grant Company, which was a petition for a declaration of rights and for an injunction. The other, a proceeding by W. T. Grant Company against Indian Trail Trading Post and the F. W. Woolworth Company, to prohibit them from the construction of a building and for damages. The issues, which are now before us, evolve from these actions and are as follows:

1. Was there a valid and binding lease contract between W. T. Grant Company and the Indian Trail Trading Post?

2. Did Indian Trail Trading Post and F. W. Woolworth Company, in the construction of a building in the Indian Trail Trading Post Shopping Center, violate the terms and conditions of this lease?

The trial court disposed of these questions by holding that there was a valid lease between the parties and that the Indian Trail Trading Post and the F. W. Woolworth Company did not violate the lease. W. T. Grant Company appealed from that portion of the judgment holding the lease was not violated. Indian Trail Trading Post, Inc., and F. W. Woolworth Company appealed from that portion of the trial court's judgment which held that there was a valid lease between the parties. The facts surrounding the issues, as we are able to glean them from the record, are as follows: In 1956, Indian Trail Trading Post, Inc., established on Preston Street and Indian Trail, in Louisville, a shopping center. The tract upon which the Center is located is triangular in form and is bisected by a rather large drainage ditch, which at the time was open. As the shopping center is laid out, there is a row of commercial structures across the east side of the lot. These buildings face in a westerly direction and immediately to their front is a considerable blacktopped area reserved for parking. West of the parking area there is located a drainage ditch and several plots designated on the plat as future building sites. The Center was first opened some ten years ago in October of 1957. Prior to

the opening, Indian Trail had negotiations with the W. T. Grant Company relative to leasing to it a building located on the commercial row or eastern boundary line of the property. These negotiations commenced in August of 1956 and in September of the same year Indian Trail forwarded to the Grant Company seven copies of a plat of the shopping center. These were examined by the Grant Company and on October 24 of that year Grant forwarded three copies of a lease to Indian Trail for execution. On October 25, 1956, Joseph C. Dahlem, President of Indian Trail executed the three copies of the lease agreement and signed three plat plans and returned these to W. T. Grant Company, who on November 13, 1956, executed the lease and lease agreements which had been returned by Indian Trail. On September 25, 1956, Grant returned duplicate copies to Indian Trail. Indian Trail then, through the action of its Board of Directors, accepted the lease and lease copy and the plot plan which had been returned to it, delivering a copy to the Commonwealth Life Insurance Company which was holder of the first mortgage on the shopping center and recorded a copy with the Jefferson County Court Clerk. W. T. Grant Company occupied the premises in October of 1957, when the shopping center opened and still occupy the premises. Chief controversy in the above transaction, around which Indian Trail now contends there is no valid lease between the parties, is occasioned by the fact that the plat plan which was prepared by Indian Trail and forwarded to the W. T. Grant Company had upon its face these words:

"Dimensions and names subject to change according to tenant requirements."

When the plat plans had been executed by W. T. Grant and returned to Indian Trail, the quoted legend had been stricken from them. Indian Trail contends that in accepting the lease and lease agreement and in placing them to record it did not notice that this had been crossed out, therefore there was no meeting of the minds. The trial court in its finding of facts and conclusions of law found that the changes were of such significance that Mr. Dahlem, as President of Indian Trail, was bound to have noticed them. The findings are as follows:

"According to the testimony, the lease, with the plot plan attached, and the lease agreement were mailed to Mr. Joseph C. Dahlem for execution, and at this time the legend had not been altered nor had the approval stamp been placed on the plot plan. Mr. Dahlem, as President of the Indian Trail Trading Post, Inc., executed these documents and in some manner, the transmittal method not being clearly shown, returned them to W. T. Grant Company. At the time they were returned to Grant, the legend had not been altered nor had the approval stamp been placed on the plot plan. Upon receipt of these documents, they were executed by Grant by the authorized signatures being placed on the lease, lease agreement and on the approval stamp which had been placed on the plot plan by a representative of Grant. Thereafter, one complete executed set (duplicate) of the documents, consisting of the lease, with the plot plan attached, and the lease agreement, was received by Mr. Dahlem on or about November 14 or 15, 1956. When so received, these documents were held by him and with him they were present at a meeting of the Board of Directors of Indian Trail on November 26, 1956. Thereafter they were delivered to Mr. Robert P. Hobson and by him or a representative of his office were recorded in the County Clerk's Office on November 30, 1956. A repetition of the chronology of the events leading up to the execution and recording of the agreements between the parties was to the Court of such significance that it was felt necessary.

"The Court notices that Grant did nothing nor said nothing to mislead Dahlem, if in fact he was misled, into the

acceptance of the lease, lease agreement and plot plan as changed. Indian Trail, by its possession from or about November 15, 1956, to November 30, 1956, without making any objection to any changes or alterations that were made to them. Furthermore, they accepted these documents, recorded them and not until years later did Indian Trail learn of these alterations and express dissatisfaction to Grant. No one contends that these changes or alterations in the instruments could not have been known by Indian Trail when they were received on or about November 14 or 15, 1956. All that was necessary for them to do was to look at them, and if the legend on the plot plan is of the importance as Mr. Dahlem, President of Indian Trail, gives to it, and this Court believes it is of such importance, then certainly he should have right then and there noticed this significant change. Not having done so and not having been lured into any false security or complacency by Grant, plaintiff is not in any position now to challenge the change in the legend (George Pridemore & Son v. Traylor Brothers, Inc., Ky., 311 S.W.2d 396; American Lumber & Mfg. Co. v. Atlantic Mill & Lumber Co., 3 Cir., 290 F. 632; Restatement of the Law of Contracts, 72(2)).

"It is the Court's findings, therefore, that the 'Lease,' with the plot plan attached, and with the legend in its altered condition, together with the 'Lease Agreement,' constitutes the rental arrangement between Grant and Indian Trail."

With the foregoing findings, we concur. Most certainly Mr. Dahlem had an obligation to the business of which he was an official to make an examination of these documents before they were approved and placed to record. This was a material change and one that was obvious and in no way concealed. Indian Hills should not be heard after ten years to say that there was no contract between the parties and espe-

cially should they not be allowed to deny the contract because of an oversight of their own chief official.

The plot plan of the shopping center referred to in our foregoing statement of facts contained four areas west of the drainage ditch marked for future use as building sites. Three of these were marked simply future buildings, the fourth was marked service station. The largest of the three is a rectangular figure slightly over 61,000 square feet in area. It is located nearly opposite the existing Grant store. Indian Trail has contracted with the Woolworth Company to construct, at this site, a building containing 109,000 square feet. This building would exceed the area contained in the site by 78%. The new building is to house a Woolco Department Store. W. T. Grant in its complaint asked the court to enjoin the construction of this building and asked for damages for breach of contract. The lease contract between Indian Trail and Grant in section 24ii provides:

"All store premises in the Shopping Center shall be constructed on the building sites labelled 'Unit A,' 'Unit B,' 'Unit C,' 'W. T. Grant Future Addition,' 'F. W. Woolworth Future Addition,' 'Future Building' and 'Service Station' shown on said Exhibit 'A;' and on no other portion of the area comprising the Shopping Center without the Tenant's written consent; and * * *."

Woolworth and Indian Trail contend that the language in section twenty-four above quoted, "all store buildings shall be constructed 'on' the building sites * * * and on no other portion of the area" only requires that the construction shall be in that general locality and that to exceed the area designated on the plot plan does not violate this provision of the lease. The trial court agreed with this contention citing as its authority the definition of "on" found in Black's Law Dictionary and several cases wherein various courts had held that the word "on" means at, near, or adjacent to.

We agree that the word "on" has many meanings with many shades and variations. To say that a picnic is to be held on the river implies that it is to be on the bank of the river and not necessarily on the river itself. To say that a person lives on a certain street is to mean that his house is adjacent to the street itself. We do not believe these authorities to be helpful in the solution of this problem and hasten to point out that section twenty-four states that future buildings shall be "on no other portion of the area" than those marked as future building sites. We believe this language to be sufficiently clear and unambiguous to indicate that all future buildings should be constructed upon that area designated for them and at no other place. This litigation evidences the failure of the appellants to accept the obvious meaning of the language contained in the lease agreement and their unwillingness to abide by the clear intention related by this language. We cannot accept the hypertechnical interpretation of the word "on" insisted on by Indian Trail and F. W. Woolworth Company. See Macy v. Wormald, Ky., 329 S.W.2d 212. We now come to a most difficult proposition which is presented by the fact that W. T. Grant Company brought this action to stop construction during its early stages. Construction has continued during the course of litigation and the building is now, insofar as we know, complete. Under this state of facts, the court properly could and would require so much of the building as lies outside the platted site to be removed. However, as we understand the position of W. T. Grant Company, it is not insisting upon removal; only that Indian Trail and F. W. Woolworth Company for the remainder of the lease to W. T. Grant Company be enjoined from using or utilizing so much of the building as lies outside the boundary lines. Certainly an injunction to this effect will not completely cover the damage which has been suffered by W. T. Grant Company. Woolco will be operating within a large building which will stand as an edifice to its "bigness," far exceeding the size of the W. T. Grant Company. We believe that Grant has suffered damages over and above those that can properly be rectified by enjoining the use of that portion of the building outside the boundary lines.

For the foregoing reasons, the action of the trial court insofar as it permits the use of that portion of the building is reversed and Indian Trail Trading Post, Inc., and F. W. Woolworth Company are enjoined from using that part of the building as lies outside the boundary lines for the remainder of the W. T. Grant Company lease. Insofar as the judgment adjudges a valid and binding contract between the parties, it is affirmed. W. T. Grant should be allowed a trial upon its claim for damage.

The action is reversed upon the appeal and affirmed upon the cross-appeal. All concur.

STEINFELD, J., not sitting.