THE STATE, EX REL. BROWN, ATTORNEY GENERAL, *v.* PALZES, INC., ET AL.

(No. 920799—Decided November 2, 1973.)

Court of Common Pleas of Cuyahoga County.

*Mr. William J. Brown,* attorney general, *Mr. C. Raymond Marvin* and *Mr. James M. Highsmith,* for plaintiff.
*Messrs. Terrell, Williams & Salim, Mr. Kenyon Snyder, Mr. Leonard A. Wolkov, Messrs. Ziegler, Metzger, Miller & Hoppe* and *Mr. William Spring,* for defendants.

## FINAL JUDGMENT

GORMAN, J. This matter comes before this court on the complaint filed on September 4, 1973 by the Attorney General of the state of Ohio and on his motion for preliminary injunction against the defendants' continued violation of the antitrust laws of the state of Ohio, Chapter 1331 of the Ohio Revised Code (commonly known as the Valentine Act). This final judgment has been agreed upon among all the parties, after conferences, and has been adopted by the court.

### FINDINGS OF FACT

The defendants Andrew Palzes, Inc. (hereinafter "Palzes") and Bambi Fashion Shop, Inc., doing business as Germaine Fashion Shop (hereinafter "Bambi"), are Ohio corporations engagd in the business of selling women's clothing and teen-age women's clothing, respectively, at the retail level to the general public in the Brecksville Shopping Center, Brecksville, Ohio. Defendant Brecksville Shopping Center, Inc. (hereinafter "Brecksville"), also an Ohio corporation, owns the commercial area known as the Brecksville Shopping Center, located at 7680 Chippewa Road, and leases space in the center to approximately twenty retail merchandisers of various goods and services.

During May, 1962, Palzes as lessee and Brecksville as lessor entered into a 15-year lease for a storeroom in the center which Palzes was to use for the retail sale of women's apparel and related accessories. (Section 6(a), Brecksville-Palzes lease dated May 15, 1962.) The Brecksville-Palzes lease contained a provision, Section 4, giving the lessee, Palzes, "the right and option to renew this lease for two (2) successive terms of five (5) years each at the same rent basis and upon the same terms and conditions" as were provided for the last year of the original fifteen (15) year term. Section 42 of the lease states:

"Lessor agrees, except for Department stores and except for Variety Stores (such as S. S. Kresge, F. W. Woolworths, etc.) Lessee shall be the only women's wear store in Lessor's Shopping Center engaged in the sale of so-called 'High Priced Quality' Women's Wear. The exclusive right granted in this Section shall not, however, prohibit or prevent Lessor from leasing space to Tenants engaged in the sale of low priced women's wear similar to the operations of stores such as Red Robin, Wilbur Rogers, Darling Stores, Inc., so long as said Tenants shall covenant not to sell 'High Priced Quality' Women's Wear."

The grant of this right is referred to generally in the shopping center industry as an "exclusive." The exclusive found in Section 42 of the Brecksville-Palzes lease conferred upon Palzes in practical effect the right to compel Brecksville, within the limitations of the exclusive, not to

lease space in the shopping center to anyone who would compete in the same business as Palzes.

Sometime prior to September 8, 1962, Brecksville, after seeking and receiving advice and agreement from Palzes as to what specific sizes and prices should define what a teen-age women's store could sell, agreed to lease a storeroom in the shopping center to Bambi and allow it to transact business there as Germaine Fashion Shop, so long as clothing sold was restricted to teen-age, petite and junior miss sizes and so long as such clothing was sold at a price of less than twenty-five dollars ($25.00) per individual garment except for suits and coats which could be sold for less than forty dollars ($40.00). Bambi agreed to and accepted these conditions and on September 8, 1962, Brecksville and Bambi executed the lease for a period of ten (10) years, Bambi having "the right and option to renew this lease for one successive term of five years at the same rent basis and upon the same terms and conditions" as were provided for the last year of the original ten year term. (Sections 3 and 4, Brecksville-Bambi lease dated September 8, 1962.) In addition to the price and product restrictions, Section 6(a) of this latter lease states that "Lessor agrees that Lessor will not rent any other storeroom in Lessor's shopping center to any other tenant who shall be engaged primarily in the sale of teen-age clothing within the price range herein stipulated."

In 1967, Palzes caused Brecksville to bring an action to enjoin Bambi from selling apparel competing with Palzes at sizes and prices other than those allowed in the Bambi lease. Brecksville sought to enforce the agreement, and a permanent injunction was entered in that case (*Brecksville Shopping Center v. Bambi Fashion Shop*, No. 848436 (C. P. Cuyahoga County, Dec. 15, 1967), after Brecksville submitted to the court pleadings, testimony in open court and certain supporting papers including an affidavit of Brecksville's counsel which stated:

"* * * that the defendant [Bambi] entered into a lease with plaintiff and agreed to the restrictions therein imposed on it after first negotiating with another tenant [Palzes] selling women's wear in plaintiff's Shopping Center; that

158

prior to entering into the lease agreement with defendant, plaintiff required it to have the approval of said other tenant; that defendant was aware of, and entered into negotiation for, said approval, and agreed to the lease restrictions as set forth in the Petition in order to obtain the approval of the other tenant and thereby obtain the lease from plaintiff, said lease being specifically dependent upon the approval of the other tenant; that said procedure is necessary to the proper operation of the Shopping Center *in order that competition between tenants may be reduced to the minimum. * * *''* (Emphasis added.)

Palzes has since urged Brecksville to enforce the injunction against Bambi by means of contempt proceedings in this court. Bambi continues in the status as tenant on a month-to-month basis under all the terms and conditions of the original lease. Both of the leases in issue contain provisions in numbered Section 40 which provide for separability of clauses, sentences, paragraphs or parts of the lease without the result of invalidating the remainder of the lease.

The court finds that the restrictive agreement which was incorporated into the Brecksville-Bambi lease was so included because of Bambi's representation and agreement that it would not be a competitor of Palzes and because of Section 42 of the Brecksville-Palzes lease which gave Palzes the right to compel Brecksville within the limitation of the exclusive, not to lease space to competing businesses, as discussed above; that the agreement fixed the prices above which Bambi could not sell; that the agreement was intended to limit and eliminate competition between Bambi and Palzes; and that the agreement did, in effect, so limit competition between the two defendant retail women's stores. The court also finds that the agreement among defendants limiting competition between Bambi and Palzes will continue unless enjoined.

CONCLUSIONS OF LAW

The court has jurisdiction over the parties and the subject matter of this action and the complaint states a cause of action. The Attorney General of the state of Ohio has standing to seek an injunction against these defendants'

acts under the antitrust laws of this state, including Chapter 1331 of the Ohio Revised Code. R. C. 1331.11.

R. C. 1331.01(B) prohibits:

"* * * a combination of capital, skill, or acts by two or more persons for any of the following purposes:

"(1) To create or carry out restrictions in trade or commerce;

"(2) To * * * increase or reduce the price of merchandise or a commodity;

"(3) To prevent competition in * * * sale, or purchase of merchandise, produce or a commodity;

"(4) To fix at a standard or figure, whereby its price to the public is in any manner controlled or established, an article or commodity of merchandise, produce, or commerce intended for sale, barter, use, or consumption in this state;

"(5) To make, enter into, execute, or carry out contracts, obligations, or agreements of any kind * * * by which they agree in any manner to keep the price of such article, commodity, or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of an article, commodity, or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, purchasers, or consumers in the sale or transportation of such article or commodity, or by which they agree to pool, combine, or directly or indirectly unite any interests which they have connected with the sale or transportation of such article or commodity, that its price might in any manner be affected.

"A trust as defined in division (B) of this section is unlawful and void."

R. C. 1331.04 provides:

"A violation of Section 1331.01 to 1331.14, inclusive, of the Revised Code, is a conspiracy against trade. No person shall engage in such conspiracy or take part therein, or aid or advise in its commission, or, as principal, manager, director, agent, servant, or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, or rates, or furnish any information to assist in carrying such purposes, or orders thereunder, or in pur-

suance thereof, or in any manner violate said sections. * * *,,

The conduct of defendants in agreeing to the maximum retail price above which articles of teen-age women's clothing could not be sold by Bambi Fashion Shop, Inc., constitutes price-fixing and a *per se* violation of the general prohibition of Ohio Revised Code Section 1331.01(B)(1) as well as of the specific prohibitions of Ohio Revised Code Subsections 1331.01(B)(2), (B)(3), (B)(4) and (B)(5). In addition to mere agreement, the defendants established through lease provisions, and enforced the agreed maximum price above which Bambi could not sell teen-age women's clothing.

A *per se* violation of the antitrust laws is that activity which has been determined by the legislature or the courts to have such a pernicious effect on free and unrestricted competition that, once the activity or conduct is shown, no evidence of its reasonableness or business excuse may be used to justify it, nor need evidence be introduced to demonstrate its unreasonableness, or the specific injury resulting to the public or the economy. Price-fixing is a *per se* violation under the antitrust statutes of this state. *State, ex rel. Cullitan,* v. *Greater Cleveland Livery Owners Ass'n.* (Ohio C. P. Cuyahoga County 1947), 74 N. E. 2d 104; see, also, *Rayess* v. *Lane Drug Co.* (1941), 138 Ohio St. 401, as well as under the common law. *Central Ohio Salt Co.* v. *Guthrie* (1880), 35 Ohio St. 666. Judge McNamee in *State, ex rel. Cullitan,* v. *Greater Cleveland Livery Owners Ass'n, supra,* adopted the federal definition in defining what constitutes the *per se* offense of price-fixing in Ohio, as follows:

" 'Any combination which tampers with price structures is engaged in an unlawful activity. Even though the members of the price-fixing group were in no position to control the market, to the extent that they raise, lower or stabilize prices they would be directly interfering with the free flow of market forces. The Act places all such schemes beyond the pale anl protects that vital part of our economy against any degree of interference.' " *Id.* at 107, quoting Mr. Justice Douglas in *United States* v. *Socony Vacuum Oil Co.* (1940), 310 U. S. 150, 220.

It has repeatedly been held that price-fixing is contrary to the policy of competition underlying the Valentine Act and the Sherman Act, after which the Valentine Act was patterned and to interpretations of which Ohio courts look for authority, *State, ex rel. Monnett,* v. *Buckeye Pipeline Co.* (1900), 61 Ohio St. 520, 56 N. E. 464; *Freeman* v. *Miller* (Superior Ct. Cincinnati 1909), 9 Ohio N. P. (N. S.) 26; *United States Tel. Co.* v. *Central Union Tel. Co.* (C. A. 6, 1913), 202 F. 66; *List* v. *Burley Tobacco Growers' Cooperative Ass'n* (1926), 114 Ohio St. 361, 151 N. E. 471; *State, ex rel. Cullitan,* v. *Greater Cleveland Livery Owners Ass'n, supra; Superior Dairy* v. *Stark County Milk Producers' Ass'n.* (1950), 89 Ohio App. 26, 100 N. E. 2d 695, and that the illegality of price-fixing "does not depend on a showing of its unreasonableness, since it is conclusively presumed to be unreasonable." *United States* v. *McKesson & Robbins* (1956), 351 U. S. 305, 309.

"It makes no difference whether the motives of the participants are good or evil; whether the price fixing is accomplished by express contract or by more subtle means; whether the participants possess market control; whether the amount of interstate commerce affected is large or small; or whether the effect of the agreement is to raise or to decrease prices." *Id.* at 310.

No Ohio court has upheld a price-fixing arrangement (*State, ex rel. Cullitan,* v. *Greater Cleveland Livery Owners Ass'n, supra* at 108), and small combinations, as well as large ones, are denounced by the Valentine Act (*Id.* at 107).

Further, the power of Palzes, contained in Section 42 of the Brecksville-Palzes lease, to compel Brecksville, within the limitations of such "exclusive," not to lease space to anyone who would compete in the same business as Palzes, that was used to achieve an agreement fixing prices and allocating along price lines the market for female apparel in the shopping center constituted part of the combination to create and carry out restrictions in trade or commerce and is unlawful and void as such. R. C. 1331.01.

The court takes note of the fact that the state has offered no evidence of any intent by any defendant to injure competition or the consuming public; neither has the state

offered evidence of any specific adverse effect or damage to competition or the consuming public. In fact, each defendant disclaims any such intent. But, even absent such intent, the conduct of defendants in agreeing to fix prices, and the achievement of such agreement partially because of the power granted in Palzes's "exclusive," constitute a conspiracy against trade as defined in Ohio Revised Code Section 1331.04, and as such is unlawful and void as provided for in Ohio Revised Code Section 1331.01, as are the lease provisions which were used to achieve and embody the unlawful agreements. Ohio Revised Code Section 1331.06.

Therefore, the court makes the following orders to insure against continued violation of the Valentine Act and to insure to each defendant the ability to conduct its business without unlawful interference from another.

ORDERS

Based upon the foregoing, it is hereby ordered, adjudged and decreed that:

1. The provisions of the final judgment applicable to any defendant shall also be applicable to each of its assigns, officers, directors, agents and employees; to all persons in active concert or participation with such defendant; and to all persons acting or claiming to act on behalf of such defendant.

2. The agreements between and among the defendants, and the lease provisions which embody those agreements, fixing prices in restraint of trade or commerce in violation of Ohio Revised Code Chapter 1331 or which have been or may be used to achieve or enforce said price-fixing agreements are adjudged unlawful and void and rendered hereby unenforceable.

3. Defendants are ordered to terminate, cancel, eliminate and expunge any provisions or terms of any lease, contract, agreement or understanding between or among themselves relating to the pricing of female apparel or relating to approval powers, exclusivity, or non-competition, which have been or may be used to obtain, effectuate, or enforce any agreement or understanding affecting the price of or allocating along price lines the market for female apparel.

4. Defendant, Andrew Palzes, Inc., is permanently en-

joined from in any manner, directly or indirectly, entering into, adhering to, continuing, maintaining, renewing, enforcing or claiming any rights under any contract, combination, conspiracy, agreement, understanding or concert of action to create or carry out restrictions in the trade or commerce of selling female apparel in violation of Ohio Revised Code Chapter 1331; from agreeing on, adopting, or otherwise suggesting and from agreeing to adhere to or achieving adherence to any plan, practice, program or device used or to be used for the determination of any price or prices for the sale of articles and items of female apparel or used or to be used to divide, allocate or apportion, by means of price, customers, territories or market for the sale of said articles and items.

5. Defendant, Bambi Fashion Shop, Inc., is permanently enjoined from in any manner, directly or indirectly, entering into, adhering to, continuing, maintaining, renewing, enforcing or claiming any rights under any contract, combination, conspiracy, agreement, understanding or concert of action to create or carry out restrictions in the trade or commerce of selling female apparel in violation of Ohio Revised Code Chapter 1331; from agreeing on, adopting, or otherwise suggesting and from agreeing to adhere to or achieving adherence to any plan, practice, program or device used or to be used for the determination of any price or prices for the sale of articles and items of female apparel or used or to be used to divide, allocate or apportion, by means of price, customers, territories or markets for the sale of said articles and items.

6. Defendants, Andrew Palzes, Inc., and Bambi Fashion Shop, Inc., are each permanently enjoined from in any manner, directly or indirectly, continuing, agreeing on, adopting, or otherwise suggesting and from agreeing to adhere to or achieving adherence to any plan, practice, program or device, between themselves or with any competitor or potential competitor of either, used or to be used to divide, allocate or apportion customers, territories or markets for the sale of articles and items of female apparel.

7. Defendant, Brecksville Shopping Center, Inc., is

permanently enjoined from in any manner, directly or indirectly, entering into, adhering to, continuing, maintaining, renewing, and enforcing or claiming any right under any contract, combination, conspiracy, agreement, understanding or concert of action to create and carry out restrictions in trade or commerce in violation of Ohio Revised Code Chapter 1331; from agreeing to any price restrictions with any one or more of its lessee stores; from including or enforcing any price provision, or restriction contained, in any lease to which it is a party as such provision or restriction relates to prices, price lines or price ranges allowed or disallowed for goods or services available for sale.

8. Defendant Brecksville Shopping Center, Inc., is ordered and directed to file with this court and serve upon the plaintiff within 45 days after the date of entry of this final judgment, an affidavit as to the fact and manner of its compliance with the above Section three (3) as it relates to the lease between Brecksville Shopping Center and Bambi Fashion Shop, Inc., and the lease between Brecksville Shopping Center and Andrew Palzes, Inc., and further to attach to such affidavit copies of said leases as conformed to this Final Judgment.

9. Defendants Brecksville Shopping Center, Inc., and Bambi Fashion Shop, Inc., as the parties in *Brecksville Shopping Center* v. *Bambi Fashion Shop*, No. 848436 (C. P. Cuyahoga County, Dec. 15, 1967), seek and the court hereby grants dissolution of the permanent injunction entered in the above-entitled action which had the effect of enforcing certain of the agreements herein declared unlawful and void and thereby unenforceable, and dismisses with prejudice such action; and the defendants are enjoined from hereafter relying upon, enforcing or attempting to enforce said dissolved injunction.

10. The plaintiff, state of Ohio by its Attorney General, neither seeks nor is it awarded civil forfeiture, as provided for in Ohio Revised Code 1331.03, against the defendants either jointly or severally.

11. For the purpose of determining and securing compliance with this final judgment and for no other purpose,

duly authorized representatives of the office of the Attorney General shall be permitted, on reasonable notice to a defendant herein, made to its principal office and subject to any legally recognized privilege:

A. Reasonable access during the office hours of such defendant to all books, ledgers, accounts, correspondence, memoranda, minutes of meeting, contracts, leases, and other records or documents in the possession or in the control of such defendant relating to any matters contained in this final judgment;

B. Subject to the reasonable convenience of such defendant, and without restraint or interference from it, to interview officers, employees or agents of such defendant, who may have counsel present, regarding any such matters. Further, a defendant herein, upon written request by the Attorney General or his authorized representative in charge of the antitrust section, and upon reasonable notice made to its principal office, shall submit such written reports, under oath if it is requested, with respect to any of the matters contained in this final judgment as from time to time may be necessary and requested for the enforcement of this final judgment. No information obtained by the means provided in this section shall be divulged by any representative of the office of the Attorney General to any person except a duly authorized representative of the office of the Attorney General, except in the course of legal proceedings to which the state of Ohio is a party for the purpose of securing compliance with this final judgment, or as otherwise required by law.

12. The cost of this action shall be borne equally by defendants.

13. Jurisdiction is retained for the purpose of enabling any of the parties to this final judgment to apply to this court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this final judgment, for the modification or termination of any of the provisions herein, for the enforcement of compliance herewith and the punishment of violations thereof.