Ira L. MENDELL, Roger S. Smith and Leonard Yaseen, d/b/a Hopkinsville Associates, a partnership, Appellants,

v.

GOLDEN–FARLEY OF HOPKINSVILLE, INC., Appellee.

Court of Appeals of Kentucky.

Jan. 6, 1978.

Rehearing Denied Feb. 2, 1978.

W. Douglas Myers, Keith & Myers, Hopkinsville, for appellants.

John M. Dixon, Jr., Turner, Dixon, Kemp & Fletcher, Hopkinsville, William J. Parker, Harlin, Parker & Rudloff, Bowling Green, for appellee.

Before HOGGE, PARK and WHITE, JJ.

PARK, Judge.

This is an appeal from a judgment of the Christian Circuit Court granting a permanent injunction against the lessor in a shopping center lease. The plaintiff-appellee, Golden-Farley of Hopkinsville, Inc., is a tenant operating a men's and boys' clothing store in the Pennyrile Mall. The Pennyrile Mall is owned and operated by Hopkinsville Associates, a partnership composed of the three defendants-appellants.

### FACTS

The primary facts in the case are undisputed. On November 24, 1970, Hopkinsville Associates entered into a lease agreement with Golden-Farley for space in the Pennyrile Mall. Section 5.01 of the lease agreement, entitled "use of premises," provided:

> Tenant shall use the lease premises for the purpose of conducting the business hereinafter set forth and for no other purpose to wit: the sale of medium to better Men's and Boy's clothing, furnishings and accessories, including the sale of men's sundries and Men's and Boy's shoes as an incidental part thereof.

Simultaneously with the execution of the lease agreement, the parties executed an addendum to the lease. Paragraph 3 of the addendum, entitled "exclusive covenant," provided:

Notwithstanding anything to the contrary herein contained, provided Tenant is not in default of the terms, conditions, or convenants of this agreement, Landlord agrees not to lease or cause to be occupied, any other space in the shopping center for the purpose of medium to better priced Men's and Boy's clothing store. This clause shall not be applicable to;

    J. C. Penney Company
    Walgreen Drug Company
    Montgomery Ward
    F. W. Woolworth Company
    Malone & Hyde Supermarket

or to any Tenant where the sale of Men's and Boy's clothing is incidental to its main line of business.

This provision was added at the insistence of Golden-Farley. The lease was for a primary term of ten years with an option to renew for two five-year extensions.

On July 23, 1976, Hopkinsville Associates entered into a lease agreement with Kinder Corporation for other space in the Pennyrile Mall. Under the terms of the Kinder lease, the leased premises could be used only for the purposes of conducting the business of "retail sale of Men's and Boy's clothing, furnishings, apparel, accessories, and footwear of all types." The Kinder Corporation operates a number of men's and boys' clothing stores under the name of "Marshall's."

When it became aware that a Marshall's store would be opened in the Pennyrile Mall, Golden-Farley commenced the present action in the circuit court on September 24, 1976. A restraining order was obtained on the same day prohibiting Hopkinsville Associates from "leasing or causing to be occupied" any space within the Pennyrile Mall to any person "which primarily sells medium to better priced Men's and Boy's clothing" other than the five stores named in the exception to the exclusive covenant contained in the addendum to the original lease agreement. Despite the restraining order, the Marshall's store was opened in mid-November 1976. The Marshall's store sells many of the same lines of clothing that are sold at the Golden-Farley store, and Marshall's and Golden-Farley are in direct competition with each other.

## VALIDITY OF RESTRICTIVE COVENANT

■ Hopkinsville Associates recognizes that the restrictive covenant is valid at common law. When a restrictive covenant in a lease is limited as to territory and duration, the Kentucky courts have consistently upheld the enforceability of the covenant. *Vanover v. Justice*, 180 Ky. 632, 203 S.W. 321, 1918E L.R.A. 662 (1918); *Vaughan v. General Outdoor Advertising Co.*, Ky., 352 S.W.2d 562 (1961); *W. T. Grant Co. v. Indian Trail Trading Post*, Ky., 423 S.W.2d 251 (1967). Hopkinsville Associates contends that the common law rule has been modified by legislation enacted by the Kentucky Legislature in 1976.

KRS 367.175 (1976 Ky. Acts, ch. 330, § 1) provides:

(1) Every contract, combination in the form of trust and otherwise, or conspiracy, in restraint of trade or commerce in this commonwealth shall be unlawful.

(2) It shall be unlawful for any person or persons to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce in this commonwealth.

Hopkinsville Associates points out that KRS 367.175 is based upon sections 1 and 2 of the Sherman Anti-Trust Act.[1] Because of the similarity of the language used in the two

---

1. Section 1 of the Sherman Anti-Trust Act (15 *U.S.C.* § 1) provides:

    Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . .

Section 2 of the Sherman Anti-Trust Act (15 *U.S.C.* § 2) provides:

    Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .

acts, Hopkinsville Associates urges this court to give the same construction to KRS 367.175 as has been given to sections 1 and 2 of the Sherman Anti-Trust Act by the federal courts. Although not bound by the federal decisions, we shall examine the restrictive covenant in this case in light of the cases construing sections 1 and 2 of the Sherman Anti-Trust Act.

█ The Sherman Anti-Trust Act is based in large part upon the common law principle that only unreasonable restraints of trade are illegal. However, some trade practices are considered to be *per se* unreasonable under the Sherman Anti-Trust Act. In *Klor's v. Broadway-Hale Stores*, 359 U.S. 207, 210–11, 79 S.Ct. 705, 708, 3 L.Ed.2d 741 (1959), the Court stated:

> Section 1 of the Sherman Act makes illegal any contract, combination or conspiracy in restraint of trade, and § 2 forbids any person or combination from monopolizing or attempting to monopolize any part of interstate commerce. In the landmark case of *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, this Court read § 1 to prohibit those classes of contracts or acts which the common law had deemed to be undue restraints of trade and those which new times and economic conditions would make unreasonable. Id., at pages 59–60, 31 S.Ct. at pages 515–516. The Court construed § 2 as making "the prohibitions of the act all the more complete and perfect by embracing all attempts to reach the end prohibited by the 1st section, that is, restraints of trade, by any attempt to monopolize, or monopolization thereof * * *." Id., at page 61, 31 S.Ct. at page 516. The effect of both sections, the Court said, was to adopt the common-law proscription of all "contracts or acts which it was considered had a monopolistic tendency * * *" and which interfered with the "natural flow" of an appreciable amount of interstate commerce. Id., at pages 57, 61, 31 S.Ct. at page 514; *Eastern States Retail Lumber Dealers' Ass'n v. United States*, 234 U.S. 600, 609, 34 S.Ct. 951, 953, 58 L.Ed. 1490. The

Court recognized that there were some agreements whose validity depended on the surrounding circumstances. It emphasized, however, that there were classes of restraints which from their "nature or character" were unduly restrictive, and hence forbidden by both the common law and the statute.

Applying these standards we conclude that the enactment of KRS 367.175 did not effect a material change in the common law of Kentucky respecting the validity of restrictive covenants in leases.

In *Savon Gas Stations Number Six v. Shell Oil Company*, 309 F.2d 306 (4th Cir. 1962), cert. den. 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 719, the owners of the Middlesex Shopping Center leased a service station to the Shell Oil Company. The lease provided that the owners would not permit any other property in the Middlesex Shopping Center to be used for the purpose of a service station which would compete with the business being conducted by Shell on the premises leased by it. In upholding the validity of this restrictive covenant, the court stated:

> The plaintiffs' case is pitched upon the theory that both the Federal Anti-Trust Statutes and the common law of Maryland are violated when the owner of a modern shopping center enters into a restrictive agreement with a lessee giving him the exclusive right to sell his wares in the area. It is well known that the success of a shopping center depends upon the gathering together in one area of a variety of enterprises which are able to serve the needs of the general public and that this end can often be best accomplished by offering to the individual merchant the exclusive right to sell in the center the kind of merchandise he handles. . . .

> We agree with the conclusion of the District judge that the restrictive covenant did not involve the violation of the Federal Statutes. It has been established from the beginning that the condemnation of the Sherman Anti-Trust Act is directed only at such agreements or con-

spiracies as impose unreasonable or undue restraint upon interstate commerce. *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619; *United States v. Trenton Potteries*, 273 U.S. 392, 395–396, 47 S.Ct. 377, 378–379, 71 L.Ed. 700; *Klor's v. Broadway-Hale Stores*, 359 U.S. 207, 211, 79 S.Ct. 705, 708–709, 3 L.Ed.2d 741. In the instant case the restraint cannot be so characterized.

309 F.2d at 309. This decision clearly supports the prior Kentucky cases upholding the validity of such provisions of common law.

■ Hopkinsville Associates asserts that the restrictive covenant in the Golden-Farley lease is *per se* unreasonable. In support of this argument, they cite two cases before the Federal Trade Commission, *Tysons Corner Regional Shopping Center*, [1973–1976 Transfer Binder] Trade Reg.Rep. (CCH) ¶20,933 (F.T.C. Dkt.No. 8886, June 10, 1975), and *Strawbridge & Clothier*, [1973–1976 Transfer Binder] Trade Reg.Rep. (CCH) ¶21,082 (F.T.C. Dkt.No. C–2812, March 22, 1976). The practices condemned by the Federal Trade Commission in these cases involved the power of major or anchor tenants in shopping centers to approve or disapprove all new shopping center tenants. In those cases, large department stores were in a position to control space allocations and retail prices under broad veto powers granted the anchor tenants by the owners of the shopping centers. No such situation is involved in this case. Golden-Farley is not a major or anchor tenant. Instead, it is a medium sized store which must compete with the large anchor tenants such as J. C. Penney and Montgomery Ward. Furthermore, the restrictive covenant applies to only one line of business, men's and boys' clothing, and it does not extend to every kind of business which might be conducted within the Pennyrile Mall. The Federal Trade Commission decisions have no application to the facts of this case.

In support of their contention that the Golden-Farley restrictive covenant is unrea-

sonable *per se*, Hopkinsville Associates relies upon a trial court opinion construing Ohio's anti-trust statute in *State ex rel. Brown v. Palzes*, 39 Ohio Misc. 155, 317 N.E.2d 262, 68 Ohio Op.2d 386 (1973). In a shopping center lease, the owner agreed that the lessee would be the only women's wear store in the shopping center engaged in the sale of "high priced, quality women's wear." As a condition of later admission into the shopping center, a younger women's store was required to agree that all items of clothing would be sold at less than $25.00 per individual garment except for suits and coats which would be sold for less than $40.00 per item. In an action brought by the state Attorney General, the trial court held that the agreements were illegal because of their price-fixing characteristics. We do not follow the decision in the *Palzes* case. The Ohio act is much broader in its language than the provisions of KRS 367.-175. The original lease agreement in *Palzes* contained a provision against *any* competition. In the present case, Golden-Farley is in direct competition with such anchor tenants as J. C. Penney and Montgomery Ward. There is no possible way for Golden-Farley to affect the prices of men's and boys' wear sold by J. C. Penney or Montgomery Ward in the manner done in the *Palzes* case.

For the foregoing reasons, we conclude that the Golden-Farley restrictive covenant is not an unreasonable restraint of trade. It does not violate the terms of KRS 367.-175 or any federal statute which might be applicable to the Pennyrile Mall.

■ Hopkinsville Associates also asserts that the restrictive covenant in the Golden-Farley lease is so ambiguous that its meaning cannot be reasonably ascertained. Under its lease with Hopkinsville Associates, Golden-Farley was prohibited from using the leased premises for any purpose other than the "sale of medium to better men's and boy's clothing, furnishings and accessories." The restrictive covenant contained in the addendum is no more ambiguous than the provision in the main lease defining the permitted uses. We conclude that neither

provision is so ambiguous that its meaning cannot be ascertained. The record indicates that Marshall's is selling the same lines of clothing in direct competition with Golden-Farley. The trial court did not err in holding that the restrictive covenant would be violated by leasing premises within the Pennyrile Mall to Marshall's.

## VALIDITY OF INJUNCTION

■ In the judgment entered by the circuit court, Hopkinsville Associates were enjoined from leasing any space in the Pennyrile Mall in violation of the restrictive covenant to any person selling medium to better priced men's and boys' clothing. In addition, the judgment provided that Hopkinsville Associates was "permanently ENJOINED and DIRECTED to cause the space presently occupied under Lease Agreement by Kinder Corporation with the assumed store name of Marshall's . . . to be vacated." Because the Kinder Corporation was not a party to the action, Hopkinsville Associates asserts that the permanent injunction is too broad. We agree. The Kinder Corporation clearly claimed an interest relating to the subject matter of the action. The restrictive covenant in the Golden-Farley lease could be enforced against the Kinder Corporation by injunction only if the Kinder Corporation had knowledge of the terms of the Golden-Farley lease. *Vaughan v. General Outdoor Advertising Co., supra* at 565–66. Without Kinder Corporation as a party to the action, there was a substantial risk that Hopkinsville Associates would incur inconsistent obligations to Golden-Farley and Kinder Corporation. Under CR 19.01, it was mandatory that Kinder Corporation be made a party to the action. *Kentucky High School Athletic Association v. Hopkins County Board of Education*, Ky.App., 552 S.W.2d 685, 689 (1977).

However, Hopkinsville Associates never raised the question in the circuit court concerning the failure to join the Kinder Corporation as a party. Generally, a party should not be permitted to raise the question of non-joinder for the first time on appeal. Nevertheless an injunction should not interfere with rights acquired in good faith by third persons who are not parties to the proceedings. *Roberts v. Davidson*, 83 Ky. 279, 7 Ky.L.Rptr. 262 (1885). Consequently, we conclude that the circuit court erred in directing Hopkinsville Associates to evict a tenant who was not a party to the action and whose rights had not been adjudicated.

## RULING

The judgment of the circuit court is affirmed except for the portion of the judgment requiring Hopkinsville Associates to cause Kinder Corporation to vacate the premises leased for the Marshall's Store. That portion of the judgment is reversed without prejudice to the right of Golden-Farley to join Kinder Corporation as a party.

All concur.