**CHILD WORLD, INC., Plaintiff,**

v.

**SOUTH TOWNE CENTRE, LTD., et al., Defendants.**

No. C–3–8629.

United States District Court, S.D. Ohio, W.D.

April 17, 1986.

Charles J. Faruki, John E. Tate, Dayton, Ohio, Robert R. Weller, Cleveland, Ohio, for plaintiff.

Roger J. Makley, John A. Cumming, Dayton, Ohio, for defendants.

OPINION; DECISION AND ENTRY SETTING FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW; JUDGMENT TO BE ENTERED FOR PLAINTIFF AND AGAINST DEFENDANTS ON PLAINTIFF'S COMPLAINT; SECTION 43(A) OF LEASE DECLARED LAWFUL AND ENFORCEABLE AS APPLIED IN THIS CASE; DEFENDANTS PERMANENTLY ENJOINED FROM VIOLATION OF SECTION 43(A) AS APPLIED; JUDGMENT ENTERED FOR PLAINTIFF AND AGAINST DEFENDANTS ON DEFENDANTS' COUNTERCLAIM FOR DECLARATORY RELIEF; TERMINATION ENTRY

RICE, District Judge.

This case was submitted to the Court, on the basis of stipulated facts, set forward *infra*, Plaintiff's trial exhibits, and the briefs of the parties. The Court has admitted into evidence Plaintiff's six trial exhibits.

## I. *Findings of Fact*

The first fifteen findings of fact were stipulated to, by the parties, in their Final Pretrial Order. (Doc. # 14).

(1) Plaintiff Child World, Inc. is a corporation organized under the laws of the State of Massachusetts, having its principal place of business in Massachusetts and qualified to do business in the State of Ohio. Child World operates large retail toy stores, throughout the State of Ohio and elsewhere, under the name of "Children's Palace."

(2) Defendant South Towne Centre, Ltd. ("South Towne") is a limited partnership organized under the laws of Ohio. South Towne owns certain real property located on State Route 725 in Miami Township, Ohio that is leased to and occupied by Child World, which operates a Children's Palace retail store on the site. This Children's Palace store is adjacent to, and part of the development of, South Towne Centre, a shopping center complex owned by this Defendant.

(3) Defendant Barbara Beerman Weprin, a citizen of the State of Ohio, is the sole General Partner of South Towne.

(4) Defendant Mad River Ltd. is a limited partnership organized under the laws of Ohio. Its sole general partner is Defendant Weprin. Mad River Ltd. has a substantial identity of interest with Defendant South Towne. Mad River Ltd. owns a parcel of land, consisting of slightly over fourteen acres, located on State Route 725 approximately one-half mile away from the property which South Towne leases to Child World.

(5) All of the limited partners of South Towne and Mad River Ltd. are citizens of the State of Ohio.

(6) There is complete diversity of citizenship among the parties, and the matter in controversy exceeds the value of $10,000, exclusive of interest and costs.

(7) On February 6, 1976, Children's Palace, Inc. entered into a Lease Agreement ("Lease") with Jessie Beerman, widow of Arthur Beerman, and Rhea Beerman Peal, for the lease of property and improvements located on State Route 725 in Miami Township, Ohio. Plaintiff's Exhibit 1 is an authentic copy of the Lease. During or about August, 1976, South Towne, with Defendant Weprin as General Partner, succeeded to all the rights and obligations of Landlord under the Lease. Barbara Weprin is a daughter of Jessie and Arthur Beerman. Child World is the corporate successor by reason of merger with the original lessee corporation, Children's Palace, Inc., and is the Tenant under such Lease.

(8) Among other provisions, Landlord and Tenant mutually agreed in pertinent part as follows in Section 43 of the Lease:

Except insofar as the following shall be unlawful, the parties mutually agree as follows:

A. Landlord shall not use or permit or suffer any other person, firm, corporation or other entity to use any portion of the Shopping Center or any other proper-

ty located within six (6) miles from the Shopping Center and owned, leased or otherwise controlled by Landlord (meaning thereby the real property or parties in interest and not a "straw" person or entity) or any person or entity having a substantial identity of interest, for the operation of a toys and games store principally for the sale at retail of toys and games, juvenile furniture and sporting goods, such as is exemplified by the Child World and Children's Palace stores operated by Tenant's parent company, Child World, Inc., at the demised premises and elsewhere.

(9) The restrictive provision in Section 43(A) of the Lease was negotiated as an inducement for the Tenant to enter into the Lease and in return for provisions of the Lease at Section 2 and Section 9, by which Tenant agreed to lease the property for a term of 20 years of continuous operation and to use the leased premises "for the operation of a standard Children's Palace Toy Store facility and for no other purpose without the express written consent of the Landlord." Also, Tenant agrees in Sections 3(b) and 8 of the Lease to pay rent based on a percentage of sales exceeding $4 million in addition to a minimum rent and to furnish the Landlord with a statement of its monthly gross sales.

(10) The Lease also provides at part C of Section 43 that "in the event of a breach or threatened breach" of the covenants contained at Section 43, "Tenant shall be entitled to any injunctive relief and any other appropriate remedy."

(11) On December 24, 1985, acting by its attorney, Raymond Clayman, Landlord advised Tenant by letter that Mad River, Ltd. had entered into an agreement to sell a portion of its real estate located on State Route 725 in Miami Township, Ohio to Toys "R" Us, Inc. Plaintiff's Exhibit 2 is an authentic copy of this letter from Landlord's attorney. This letter further stated that Toys "R" Us intends to construct on that real estate a facility for the sale of toys, games and similar items to which Section 43(A) of the Lease refers, and that

Mad River, Ltd. intended to complete the sale of real estate to Toys "R" Us on or before January 31, 1986.

(12) Defendant Barbara Weprin, as General Partner of Mad River Ltd., purchased on or about late 1984, a slightly over fourteen acre parcel of land approximately one-half mile from the Children's Palace facility covered by the Lease. Through the efforts of Defendant Weprin, the land was rezoned to permit retail business use. Defendants Weprin and Mad River Ltd. agreed to sell an approximately four and one-half acre parcel of that real estate to the corporation known as Toys "R" Us, Inc., which is the largest toy supermarket retailer in the United States. Plaintiff's Exhibit 3 is an authentic copy of these Defendants' Sales Contract, dated December 19, 1985, with Toys "R" Us, Inc. Plaintiff's Exhibit 4 is an authentic copy of Defendants' Development Agreement with Toys "R" Us, Inc., dated December 19, 1985; and Plaintiff's Exhibit 5, is an authentic copy of Defendants' Escrow Agreement, dated December 19, 1985, relating to the sale of real estate to Toys "R" Us, Inc. Toys "R" Us, Inc. intends to construct a toy store (containing approximately 41,900 square feet, a mezzanine, and other facilities) of the type prohibited by Section 43, part A, of the Lease. Defendants Weprin and Mad River Ltd. plan to complete the proposed sale to Toys "R" Us, Inc. on or before June 1, 1986. The Development Agreement contemplates the Defendants' commencement of site improvement work on April 1, 1986.

(13) Toys "R" Us, Inc. is free to purchase other parcels of land at other locations in Miami Township or elsewhere to the extent not owned or controlled by Landlord.

(14) If enjoined, Defendants will endeavor to sell the real estate presently contemplated for sale to Toys "R" Us, Inc. to persons other than Toys "R" Us, Inc.

(15) Section 43(A) of the Lease, if lawful and enforceable, prohibits Defendants' proposed sale of real estate to Toys "R" Us, Inc.

The following four findings of fact have been proven to the Court by a preponderance of the evidence:

(16) Defendants notified Child World of the agreement of Mad River Ltd. to sell real estate to Toys "R" Us within one-half mile of Child World's Children's Palace store located at South Towne Centre shopping center by letter of their counsel, dated December 24, 1985. Plaintiff's Tr. Exh. 2. This letter informed Child World that Defendants, on advice of counsel, considered the covenant at Section 43(A) of the Lease to be unlawful and unenforceable, and therefore Defendants intended to proceed with the sale of the real estate to Toys "R" Us, Inc. on or before January 31, 1986.

(17) Defendants will be able to sell the real estate presently slated for sale to Toys "R" Us to other persons at a price approximating the agreed sale, given the continuing enhancement of the value of this real estate. Plaintiff's Tr. Exh. 6, Deposition of J. Tim Logan, at 14.

(18) The intent and purpose behind the inclusion of a provision such as Section 43(C) of the Lease, which entitles the Tenant (Plaintiff) to injunctive relief in the event of a breach or threatened breach, is to make certain that the Lease provisions are enforced and that the other party honors its agreements. Plaintiff's Trial Exh. 6, Deposition of J. Tim Logan, at 55.

(19) Section 6.01(b) of the Reciprocal Easement and Operation Agreement signed by Defendants Weprin and Mad River Ltd. and Toys "R" Us provides that either party to the agreement is entitled to obtain an injunction to specifically enforce performance of the obligations included in the Agreement. Plaintiff's Tr. Exh. 3, Exh. F, § 6.01(b).

II. *Conclusions of Law*

(1) This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the matter in controversy exceeds the value of $10,000, exclusive of interest and costs. Venue lies in this district pursuant to 28 U.S.C. § 1391(a). Ohio law governs the issues of state law in this diversity action. Rule 501, Fed.R.Evid.

·(2) Defendants South Towne, Weprin and Mad River, Ltd. have a substantial identity of interest within the meaning of Section 43(A) of the Lease.

(3) Mad River Ltd.'s contemplated sale to Toys "R" Us, Inc. of real estate located within one-half mile of Child World's Children's Palace store at South Towne Centre shopping center would constitute a breach of Section 43(A) of the Lease.

(4) Defendants intend to proceed with the sale of this real property to Toys "R" Us, Inc., and will commit a breach of Section 43(A) of the Lease, unless restrained by Order of this Court.

(5) Defendants' procurement of an opinion from special counsel as to the invalidity of Section 43(A) of the Lease under the federal antitrust laws does not prevent a finding that their proposed sale to Toys "R" Us constitutes a breach of the Lease.

(6) There is no private right of action under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). *Baum v. Great Western Cities, Inc. of New Mexico,* 703 F.2d 1197, 1209 (10th Cir.1983); *Dreisbach v. Murphy,* 658 F.2d 720, 730 (9th Cir.1981).

(7) Defendants have established a nexus to interstate commerce sufficient to warrant jurisdiction over their antitrust defense and counterclaim under Section 1 of the Sherman Act, 15 U.S.C. § 1. *Stone v. William Beaumont Hospital,* 782 F.2d 609, 613–14 (6th Cir.1986); *Harold Friedman, Inc. v. Thorofare Markets,* 587 F.2d 127 (3rd Cir.1978).

(8) Section 43(A) of the Lease is not illegal *per se* under Section 1 of the Sherman Act. *Harold Friedman, Inc. v. Thorofare Markets,* 587 F.2d 127, 141, 142 n. 7 (3rd Cir.1978); *Optivision, Inc. v. Syracuse Shopping Center Associates,* 472 F.Supp. 665, 675, 676 (N.D.N.Y.1979).

(9) Section 43(A) of the Lease is not illegal *per se* under the Valentine Act, Ohio

Rev.Code § 1331.01 *et seq. State ex rel. Brown v. Palzes,* 39 Ohio Misc. 155, 317 N.E.2d 262, 68 Ohio Op.2d 386 (Cuyahoga Cty.Ct.C.P.1973) and *State ex rel. Brown v. Zayre of Ohio,* 41 Ohio Misc. 117, 324 N.E.2d 186, 70 Ohio Op.2d 268 (Cuyahoga Cty.Ct.C.P.1974) are distinguishable.

(10) Defendants have the burden of establishing that Section 43(A) is invalid under Section 1 of the Sherman Act as an unreasonable restraint of trade. *Lektro-Vend Corp. v. Vendo Co.,* 660 F.2d 255, 265 (7th Cir.1981), *cert. den.,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

(11) Defendants have introduced no evidence as to the relevant product and geographic markets for purposes of the rule of reason analysis under Section 43(A) and for demonstration of the unreasonable impact of Section 43(A) upon competition in those markets. Nor have Defendants introduced evidence to the effect that no alternative sites for a Toys "R" Us store exist. Rather, the evidence indicates that Toys "R" Us will still establish a store in the vicinity of Plaintiff's store in Miami Township even if Section 43(A) were found lawful. Plaintiff's Exh. 6, Deposition of Tim Logan, at 13.

(12) A restrictive covenant challenged as unreasonable under Section 1 of the Sherman Act will be upheld as applied to the extent that a breach of the covenant occurred or is threatened to occur within a reasonable geographic area and time period. *Lektro-Vend Corp. v. Vendo Corp.,* 660 F.2d 255, 266–67 (7th Cir.1981), *cert. den.,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). Based on all the circumstances, Section 43(A) is found valid, as applied, under Section 1 of the Sherman Act, meaning that it is lawful and enforceable to the extent of one-half mile.

(13) Defendants have the burden of establishing that Section 43(A) is unreasonably broad in scope and effect in order to prevail under the Valentine Act. *C.K. & J.K., Inc. v. Fairview Shopping Center,* 63 Ohio St.2d 201, 407 N.E.2d 507 (Ohio 1980) (Syl. 1).

(14) Section 43(A) is valid, as applied, under the Valentine Act, meaning that it is lawful and enforceable to the extent of one-half mile. *See Raimonde v. Van Vlerah,* 42 Ohio St.2d 21, 325 N.E.2d 544 (Ohio 1975).

(15) Section 43(A) does not violate the public policy of Ohio. *C.K. & J.K. v. Fairview Shopping Center,* 63 Ohio St.2d 201, 206, 407 N.E.2d 507, 510 (Ohio 1980).

(16) Unless Defendants are enjoined from their intended breach of Section 43(A) of the Lease, Child World will suffer immediate and irreparable harm, for which it has no adequate remedy at law, because Toys "R" Us, Inc., will proceed to build and operate a competing toy store within one-half mile of Child World's Children's Palace store and Child World will lose one of the major inducements for entering into its risks and obligations under the lease.

(17) Toys "R" Us, Inc., is free, and intends, to purchase or lease other sites which are available in or near Miami Township, Ohio, if the Court enjoins Defendants' intended sale of real property to Toys "R" Us, Inc. Accordingly, competition by Toys "R" Us, Inc. will not be unreasonably restrained, if affected at all, by enforcement of Section 43(A) of the Lease. The public interest, therefore, is not harmed by the issuance of injunctive relief to Plaintiff.

(18) Defendants will not suffer unreasonable hardship, if the Court enjoins their intended breach of the Lease, for Defendants expect to be able to sell or lease their real property to someone other than Toys "R" Us, Inc., at a comparable price. Plaintiff's right to enforcement of the Landlord's contractual commitment, and the irreparable injury to Child World from Defendants' breach of the Lease, outweigh any harm to Defendants from an injunction.

### III. *Discussion*

The parties have agreed, in Finding of Fact # 15, that if Section 43(A) of the Lease is lawful and enforceable, then Defendants' proposed sale of real estate to Toys "R" Us is prohibited by that section.

This stipulation leaves only one issue for this Court to resolve, that issue being the lawfulness of Section 43(A).[1]

Defendants contend, as their defense to Plaintiff's Complaint and in their counter-claim seeking a declaratory judgment, that enforcement of Section 43(A) would violate public policy and that the clause is void and unenforceable under the Sherman Antitrust Act, 15 U.S.C. § 1, Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1),[2] and/or the Ohio Valentine Act, Ohio Rev.Code § 1331.01 *et seq*. This Court concludes that it has jurisdiction under the Sherman Act, that Section 43(A) is not illegal *per se* under either federal or state antitrust law, that the rule of reason is applicable to the determination of the legality of this lease provision, and that Section 43(A) must be enforced to the extent of one-half mile, as sought by Plaintiff.

### 1. *Interstate Commerce*

Section 1 of the Sherman Act provides in relevant part that "[e]very contract, combination ... or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Plaintiff, observing that this case involves the proposed sale of one parcel of real estate in Miami Township, questions whether Defendants have established the nexus to interstate commerce required by the statute. Activity which is local in nature must be shown to have an "effect on some other

appreciable activity demonstrably in interstate commerce." *Stone v. William Beaumont Hospital*, 782 F.2d 609, 613–14 (6th Cir.1986) (quoting *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980)). The *Stone* decision also requires that the local conduct itself be shown to "infect," in a "not insubstantial" way, the general business activites of the defendant which do, or are likely to, affect interstate commerce. *Id*.

■ The parties are in agreement that Plaintiff Child World is a Massachusetts corporation which operates large retail toy stores throughout the State of Ohio and elsewhere under the name of "Children's Palace." Finding of Fact # 1. They are also agreed that Toys "R" Us, the proposed purchaser of a parcel one-half mile from Plaintiff's "Children's Palace" store in Miami Township, is the largest toy supermarket retailer in the United States. Defendants have challenged Plaintiff's desire to enforce a restrictive covenant, Section 43(A) of the Lease, in an effort to prevent Toys "R" Us from establishing a competing toy store on the parcel which Defendants propose to sell to it. The Court agrees with Defendants that these uncontroverted facts are sufficient for purposes of the nexus with interstate commerce necessary for jurisdiction under Section 1 of the Sherman Act.

In *Harold Friedman, Inc. v. Thorofare Markets*, 587 F.2d 127 (3rd Cir.1978), plaintiff, a supermarket operator, was eliminat-

---

1. Defendants have argued to the Court that their proposed sale of real estate to Toys "R" Us does not result in a breach of the Lease, given their procurement of an opinion from special counsel to the effect that Section 43(A) is unlawful under the federal antitrust laws. Defendants' theory, unfortunately, is one whose time has not yet come. Even if Defendants' special counsel had unequivocally stated that Section 43(A) was illegal as applied to the specific facts of the case, which does not appear from the record to have been the case, Section 43(A) of the lease provides for certain covenants to be observed by Landlord and Tenant "[e]xcept insofar as [such convenants] shall be unlawful." The determination of whether an agreement of this nature is unlawful must come from a court of law, not

from special counsel, no matter how experienced. Defendants' determination of the unlawfulness of the restrictive covenant contained in Section 43(A), no matter how reasonable, is not a defense to their breach of the Lease.

2. The Court does not consider Defendants' challenge to Section 43(A) under Section 5 of the Federal Trade Commission Act, as the federal courts have held that no private right of action exists under the Act. *Baum v. Great Western Cities, Inc. of New Mexico*, 703 F.2d 1197, 1209 (10th Cir.1983); *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir.1981); *Alfred Dunhill, Ltd. v. Interstate Cigar Company, Inc.*, 499 F.2d 232, 237 (2d Cir.1974).

ed from a shopping center by defendant's invocation of a restrictive covenant in its shopping center lease. In finding Sherman Act jurisdiction over plaintiff's Section 1 claim against defendant, the Third Circuit noted that defendant was a large interstate supermarket chain, and stated:

> Therefore, when a large interstate supermarket chain is in the picture, anticompetitive activities directed at an individual store will inevitably have a substantial effect upon the flow of goods across state lines to either the victimized establishment or the firm that is engaged in the anticompetitive practice, if not to both. Where, as here, such interstate supermarket industry is involved, it cannot be said that the "relationship to interstate commerce is too tenuous in a practical sense to warrant federal control."

*Id.* at 136 (footnote omitted).

The Third Circuit's decision in *Friedman* antedated the Supreme Court's ruling in *McLain*, which forms the basis of the Sixth Circuit's analysis in *Stone*. The *Friedman* court's focus upon the economic realities of a charge of anticompetitive conduct directed at a sizeable interstate retailer operating in a particular local market is, nonetheless, useful in the context of this case. Given Plaintiff's undisputed activity as an interstate retailer of toys, goods must flow over state lines to its Miami Township "Children's Palace" store in order to permit its operation. The operation of this store in Ohio has an "effect on some other appreciable activity demonstrably in interstate commerce" by virtue of its demand for out-of-state supplies and its undeniable role in the profitability of a multi-state network of large retail toy stores. Plaintiff's desire to enforce Section 43(A), moreover, is likely to infect in a "not insubstantial way" its activities in interstate commerce, as such allegedly anticompetitive conduct would in turn affect the flow of goods to Plaintiff across state lines.

A comparison of the instant facts to those in *Stone*, where no sufficient nexus with interstate commerce was found, underscores the appropriateness of Sherman Act jurisdiction herein. In *Stone*, plaintiff's claim was that a hospital and various staff members acted in concert to deprive plaintiff, a physician, of staff privileges in restraint of trade. The district court found interstate commerce in the out-of-state purchase by defendants of hospital supplies, out-of-state funds received by defendants for medical procedures performed, and plaintiff's income from out-of-state patients. 782 F.2d at 613. The Sixth Circuit found that the allegedly illegal conduct of defendants failed to have more than a "de minimis impact on interstate commerce." *Id.* at 614. There is no such gap between the desire of a national retailer to enforce an allegedly anticompetitive restrictive covenant in a particular local market and the potential flow of goods over state lines to the retail store seeking to benefit from the covenant's alleged restriction of competition.[3]

### 2. *Illegality Per Se*

### A. *Sherman Act*

Defendants argue that Section 43(A) violates Section 1 of the Sherman Act, contending that the provision amounts to a *per se* violation of the statute or, alternatively, that an unreasonable restraint of trade is the provision's object or effect. *See Richter Concrete Corp. v. Hilltop Basic Resources*, 547 F.Supp. 893, 917 (S.D.Ohio 1981), *aff'd*, 691 F.2d 818 (6th Cir.1982). The *per se* analysis is applicable to those restraints "which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore

---

**3.** Even were this Court to conclude that the requisite nexus with interstate commerce was lacking in this case, Section 1 of the Sherman Act would remain relevant to this Court's analysis. Subject matter jurisdiction herein is based upon diversity of citizenship, 28 U.S.C. § 1332, and Defendants have invoked Ohio's Valentine Act as an additional ground for the illegality of Section 43(A). Decisions under the Sherman Act, after which the Valentine Act was modeled, are used as guidelines in the resolution of issues under the Valentine Act. *C.K. & J.K., Inc. v. Fairview Shopping Center Corp.*, 63 Ohio St.2d 201, 204, 407 N.E.2d 507, 509 (Ohio 1980).

illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

The Federal Trade Commission (FTC) and a student commentator, *see* 86 Harv.L. Rev. 1201, 1248–49 (1973), believe exclusionary provisions in a shopping center lease to be illegal *per se,* and Defendants urge this Court to follow their lead. The federal courts presented with this argument, however, have uniformly declined to find restrictive covenants similar to Section 43(A) illegal *per se* under the Sherman Act. *E.g., Harold Friedman, Inc.,* 587 F.2d at 141, 142 n. 57 (restrictive covenant neither a group boycott nor a concerted refusal to deal); *Optivision, Inc. v. Syracuse Shopping Center Associates,* 472 F.Supp. 665, 675–76 (N.D.N.Y.1979) (restrictive covenant not a veiled attempt at price fixing); *Borman's, Inc. v. Great Scott Supermarkets, Inc.,* 433 F.Supp. 343, 348–50 (E.D.Mich. 1975) (restrictive covenant neither had nor was intended to have same effect as price fixing arrangement); *Dalmo Sales Co. v. Tyson's Corner Regional Shopping Center,* 308 F.Supp. 988, 994 (D.D.C.1970), *aff'd,* 429 F.2d 206 (D.C.Cir.1970) (restrictive covenant not a group boycott).

■ The consensus of the federal courts which have considered covenants in shopping center leases is one with which this Court can agree; namely, that the varying terms, conditions, and economic justifications for such restrictions render them inappropriate subjects for application of the *per se* rule. Defendants have not alleged nor proven anything about Section 43(A) of the lease which would indicate that it has only anticompetitive consequences. Indeed, in Finding of Fact # 9, Defendants agree that Section 43(A) was negotiated as an inducement for Plaintiff to erect a Children's Palace store on Defendants' premises and to enter into a twenty-year lease. This economic justification for exclusivity clauses is among the primary reasons that clauses such as Section 43(A) have not been

found to be *per se* illegal, but rather have been found consistent with the public interest in economic development. Such laws can induce tenants to establish stores and to enter into a particular marketplace, often then encouraging the entry of other, often smaller, merchants. *Optivision,* 472 F.Supp. at 679; *Borman's,* 433 F.Supp. at 349; *Dalmo,* 308 F.Supp. at 994–95. Accordingly, the Court declines Defendants' invitation to find Section 43(A) *per se* illegal under Section 1 of the Sherman Act.

### B. *Valentine Act*

Defendants challenge Section 43(A) of the Lease as *per se* illegal or as unreasonably broad under Ohio's Valentine Act as well. Ohio Rev.Code § 1331.01 provides that a "trust is unlawful and void." A violation of Section 1331.01 is declared a "conspiracy against trade" under Ohio Rev. Code § 1331.04. A "trust" is defined, in pertinent part, in Section 1331.01(B) as:

> ... a combination of capital, skill, or acts by two or more persons for any of the following purposes:
>
> (1) To create or carry out restrictions in trade or commerce;
>
> (2) To limit or reduce the production, or increase or reduce the price of merchandise or a commodity;
>
> (3) To prevent competition in ... sales or purchase of merchandise, produce or commodity;
>
> . . . .
>
> (5) To make, enter into, execute, or carry out contracts, obligations, or agreements of any kind by which they agree to pool, combine, or directly unite any interests which they have connected with the sale ... of such article or commodity, that its price in any manner be affected.

■ As noted *supra* in footnote 3, federal precedent under the Sherman Act has guided the Ohio courts' interpretation of the Valentine Act. The *per se* doctrine has been used by the Ohio courts to invalidate restrictive covenants in shopping center leases which had the purpose or effect of fixing prices. *State ex rel. Brown v. Zayre of Ohio,* 41 Ohio Misc. 117, 324

N.E.2d 186, 70 Ohio Op.2d 268 (Cuyahoga Cty.Ct.C.P.1974); *State ex rel. Brown v. Palzes,* 39 Ohio Misc. 155, 317 N.E.2d 262, 68 Ohio Op.2d 386 (Cuyahoga Cty.Ct.C.P. 1973). This Court finds Section 43(A) to be distinguishable from the restrictive covenants deemed *per se* illegal on this basis, thus preventing a finding of *per se* illegality under the Valentine Act.

In *Palzes,* the restrictive covenant at issue allowed the tenant, a retailer of "high priced" women's clothing, not only to prohibit the landlord from leasing space in the shopping center to competitors in this higher-priced women's clothing market, but also to prohibit rental to retailers of teen-age women's clothing whose garments were sold at prices above a certain maximum price. The court found that such an agreement as to the maximum retail price for teen-age women's clothing was *per se* illegal under the Valentine Act as a price-fixing arrangement. 39 Ohio Misc. at 160, 317 N.E.2d 262, 68 Ohio Op.2d at 389.

In *Zayre,* the lease procured by Zayre excluded rental within the same shopping center to (1) any store which advertised itself as a discount center; (2) any apparel store selling "popular priced" merchandise; (3) any store operated by a national or regional chain; (4) any drug store selling at discount prices with less than conventional mark-ups or drug store operated by a national or regional chain; and (5) other possible competitors of Zayre, such as department stores, variety stores, appliance stores, toy stores, and juvenile furniture stores. The restrictive covenants in the Zayre lease were found *per se* illegal, with the court observing:

> The provisions of Zayre's lease guarantee it complete freedom from price competition in the sale of a wide range of merchandise in, and to some extent beyond, the Center. The lease defines and limits the price, price range or pricing policy of any prospective tenant who would otherwise compete with Zayre. Other lease provisions eliminate price competition by excluding prospective tenants with merchandise similar to that

sold by Zayre. Such restraints on price competition fall within the broad range of conduct condemned by the Supreme Court of the United States as price fixing in *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 221 [60 S.Ct. 811, 843, 84 L.Ed. 1129] (1940).

41 Ohio Misc. at 121, 324 N.E.2d 186, 70 Ohio Op.2d at 270–71.

Unlike the provisions deemed illegal *per se* in *Palzes* and *Zayre,* Section 43(A) in no way attempts to manipulate or limit the prices of any other store at South Towne Shopping Centre or elsewhere. Nor does Section 43(A) prohibit Defendants' rental or sale to any store except a "copycat" store, that is, a toy and games store selling primarily toys, games, children's furniture and sporting goods in the image of a Children's Palace store. Thus, Defendants are free under Section 43(A) to lease or sell to stores selling competitive goods at every and any price range. There is no evidence in the record as to any impact upon prices stemming from Toys "R" Us' inability to erect a store on Defendants' property. Accordingly, the Court concludes that Section 43(A) is not illegal *per se* under the Valentine Act.

### 3. *Reasonableness of Section 43(A)*

### A. *Sherman Act*

■ Defendants' attempt to characterize Section 43(A) as illegal *per se* having failed, the rule of reason analysis must be applied to the challenged provision. As the parties asserting an antitrust defense to Plaintiff's breach of contract action, and as the parties seeking a declaratory judgment as to Section 43(A)'s invalidity under Section 1 of the Sherman Act, Defendants have the burden of establishing that Section 43(A) constitutes an unreasonable restraint of trade. *Lektro-Vend Corp. v. Vendo Co.,* 660 F.2d 255, 265 (7th Cir.1981), *cert. den.,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *Optivision,* 472 F.Supp. at 677–79.

A number of factors have been considered by the courts which have excluded restrictive covenants in shopping center leases: (1) the relevant product and geo-

graphic markets, together with the showing of unreasonable impact upon competition in these markets, due to the restrictive covenant; (2) the availability of alternate sites for the entity excluded by the operation of such a covenant; (3) the significance of the competition eliminated by the exclusivity clause, and whether present or future competitors were the parties excluded; (4) the scope of the restrictive covenant and whether it varied depending on particular circumstances; and (5) the economic justifications for the inclusion of the restrictive covenant in the lease. *Harold Friedman, Inc.*, 587 F.2d at 142–44; *Optivision*, 472 F.Supp. at 676–79; *Borman's*, 433 F.Supp. at 350–51.

Defendants have made no attempt to address the majority of these factors and to introduce evidence as to the markets affected by Section 43(A), the nature of the competition in these markets, and the like. Rather, Defendants focus exclusively upon the breadth of Section 43(A) and its prohibition of sale or lease by Defendants to competitors of Plaintiff within a six-mile radius of the South Towne Centre shopping center. Defendants remind the Court that in none of the cases cited by Plaintiff was a restrictive covenant with a six-mile radius upheld under the rule of reason.

▮▮▮▮ Due to the particular facts of this case, however, the Court needs not, and specifically does not, reach the validity of the six-mile limitation contained in Section 43(A). Regardless of possible overbreadth, a restrictive covenant challenged as unrea-

sonable under Section 1 of the Sherman Act will be upheld to the extent that a breach of the covenant has occurred or is threatened to occur within a reasonable geographic area and time period. *Lektro-Vend Corp.*, 660 F.2d at 266–67.[4] The parties have agreed, in Finding of Fact # 12, that the parcel which Defendants seek to convey to Toys "R" Us is approximately one-half mile from the Children's Palace store covered by the Lease. The Court finds that Section 43(A) is lawful and enforceable to the extent of one-half mile, as required by the facts of this case.[5]

As noted *supra*, Defendants have the burden of establishing that Section 43(A), enforced to the extent of one-half mile, would constitute an unreasonable restraint of trade. Defendants have not, however, presented any evidence to discharge their burden of demonstrating unreasonableness. Furthermore, the facts in this case, both those proven by the parties and those of which the Court takes judicial notice, tend to underscore the reasonableness of Section 43(A) as applied. Considering the latter set of facts first, this Court is quite familiar with the area of Miami Township within which the South Towne Centre is located. The Court takes judicial notice of the manner in which the real property in the Centre's vicinity has been developed, the rate at which economic development has proceeded, and the physical relationship of shopping centers, one to another, in this area. These current economic and geographic characteristics, of which judi-

---

**4.** *Lektro-Vend Corp.* involved non-competition agreements signed by a company and its founder after the sale of the company's assets to Vendo, a competitor. Shortly after the execution of these agreements, the company and its founder gave financial and other assistance to individuals engaged in the development of a product in direct competition with the assets which had been purchased by Vendo. This assistance occurred in the very community where the company bound by the covenant not to compete had been based. Although the restrictive covenants binding the company and its founder were of national and international scope, the Seventh Circuit enforced them to the extent necessary to prohibit the conduct described *supra*. 660 F.2d at 264–69.

**5.** The parties have stipulated that the site of the proposed Toys "R" Us store, on a parcel sold by Defendants to Toys "R" Us, is one-half mile from Plaintiff's Children's Palace store. As a practical matter, the proposed Toys "R" Us store may be slightly more or slightly less than one-half mile from the Children's Palace store in question. By accepting the stipulations of the parties, the Court's intent and purpose is to enforce Section 43(A) to cover the one-half mile distance between Plaintiff's Children's Palace store and the proposed Toys "R" Us store, plus or minus whatever geographic increment is necessary to fully embrace the actual distance separating the locations of these establishments.

cial notice is taken, are among the factors which tend, even apart from Defendants' failure to meet their burden of showing unreasonableness, to support the enforceability of Section 43(A) to the extent of one-half mile.

Turning to the impact which enforcement of Section 43(A), as applied in this case, would have upon the Defendants, the burdens of enforcement are not unduly great. As noted *supra*, Section 43(A) does not appear to preclude rental or sale, even within a one-half mile radius, to any number of stores which can compete with a Children's Palace toy and game store but which are not "copycat" stores. On the financial level, there is testimony from a representative of Defendants in the record to the effect that the value of the parcel in question increases almost daily. Moreover, Defendants believe that they will have no difficulty in finding another purchaser, should Section 43(A) preclude their sale of the parcel to Toys "R" Us. Plaintiff's Exh. 6, Deposition of J. Tim Logan, at 7–8, 11–15.

Enforcement of Section 43(A) to the extent of one-half mile would also not appear to foreclose the entry of Toys "R" Us into competition with Plaintiff's store in the environs of the South Towne Centre shopping center. In his deposition, J. Tim Logan indicated that, even were Section 43(A) upheld, presumably in its entirety, Toys "R" Us would still establish a store in the vicinity of Plaintiff's store. Plaintiff's Exh. 6, Deposition of J. Tim Logan, at 13.

Obviously, the question of Section 43(A)'s enforcement to the extent of one-half mile is one of degree. In 1976, Defendant South Towne's predecessor under the Lease was willing to agree to a six-mile restrictive covenant in order to induce Plaintiff's corporate predecessor to enter into a twenty-year lease for the operation of a Children's Palace toy store. Finding of Fact # 9. Plaintiff's predecessor also agreed to pay a minimum rent, to pay an additional rent based on sales in excess of $4 million, and to provide its landlord with its monthly sales figures. Other courts have believed that restrictive covenants of a scope of one-half mile or more, albeit less than six miles, are legitimate lures by landlords in order for shopping center tenants to enter particular marketplaces and to thereby enhance the economic development of the community. *Valley Properties, Inc. v. King's Dep't Stores*, 505 F.Supp. 92, 95 (D.Mass.1981) (three miles); *Gillen-Crow Pharmacies v. Mandzak*, 5 Ohio St.2d 201, 203, 215 N.E.2d 377, 379 (Ohio 1966) (one-half mile). The public has surely benefited from the development of South Towne Centre. As a restriction of six miles appeared reasonable to Defendants' predecessors at the time of bargaining, enforcement of Section 43(A) of the Lease to the extent of one-half mile is consistent with that original calculation of value, and certainly reasonable.[6] *See* R. Bork, Ancillary Restraints and the Sherman Act, 15 A.B.A. Section of Antitrust Law Proceedings 211, 223–24 (1959).

#### B. *Valentine Act*

■ In *C.K. & J.K., Inc.*, the Ohio Supreme Court ruled that "[o]rdinarily, a provision in a shopping center lease granting a lessee the exclusive right to carry on a certain line of business in the shopping center does not constitute an illegal restraint of trade under R.C. Chapter 1331, as long as the scope and effect of the grant

---

6. The six-mile scope of Section 43(A) is, as Defendants have pointed out, a geographic restriction of considerable magnitude. The Court has not been presented with any decisions upholding a modern shopping center lease exclusivity clause of this breadth. Nor can the Court take judicial notice of the reasonableness of such a restriction in the Miami Township environs. The Court believes, accordingly, that a hearing would be required before the reasonableness of Section 43(A), on its face, could be determined. Obviously, this belief as to the necessity of a hearing on the validity of a six-mile restriction, as opposed to enforcement of a one-half mile restriction without a hearing, poses the question of the proper judicial treatment of a restriction falling between these two poles in geographic scope. Given the facts in this case, the Court needs not reach the questions posed by restrictive covenants falling within this intermediate group.

is not unreasonably broad." 63 Ohio St.2d at 201, 407 N.E.2d at 507 (Syl. 1). Defendants argue that *C.K. & J.K., Inc.* involved a restrictive covenant confined in scope to the shopping center itself, and that Section 43(A) is unreasonably broad under the Valentine Act as it extends past the confines of the South Towne Centre. This Court does not agree, and finds that enforcement of Section 43(A) as applied in this case is lawful under the Valentine Act.

The Court finds Defendants' reading of *C.K. & J.K., Inc.*, as an intial matter, to be overly narrow. The restrictive covenant at issue in *C.K. & J.K., Inc.*, involved a lease provision, obtained by a lounge, which prevented the landlord from permitting any other establishment in the shopping center to serve alcoholic beverages, except for beer. The Ohio Supreme Court, in arriving at the general rule cited *supra* as to the permissibility of exclusivity clauses in shopping center leases, made the following observations:

> We [arrive at this general rule] out of a recognition of the fact that lease restrictions are often necessary in order for a shopping center to obtain a desirable tenant.
>
> The restriction in the case at bar is not unreasonably broad in scope or effect. The restriction does not affect the entire community, only the shopping center (a restaurant with a full liquor permit operates across the street). In addition appellant is permitted to sell beer. As a consequence, appellees have not violated R.C. Chapter 1331.

63 Ohio St.2d at 206, 407 N.E.2d at 510 (footnote omitted). Certainly the restrictive covenant's confinement to the shopping center was a factor in the Ohio Supreme Court's analysis of the provision's reasonableness. Nothing in the language of *C.K. & J.K., Inc.*, however, indicates that the decision stands for the proposition that restrictive covenants in a lease which extend past the shopping center itself are overly broad for Valentine Act purposes. Had the Ohio Supreme Court intended to fashion such a rule, its holding in *C.K. & J.K., Inc.* would doubtless have so framed the issue.[7]

Apart from this interpretation of *C.K. & J.K., Inc.*, Defendants have offered no evidence to demonstrate that Section 43(A) is unreasonably broad under the Valentine Act. Setting aside Defendants' proffered interpretation of *C.K. & J.K., Inc.*, this Court's inquiry under the Valentine Act, and under *C.K. & J.K., Inc.*, is one of reasonableness. The Court has already set forth in Section 3, Part A its analysis of the reasonableness of Section 43(A) as applied, an analysis including consideration of the economic justifications stressed by the court in *C.K. & J.K., Inc.* The Court also finds its approach under the Sherman Act, to-wit, enforcement of Section 43(A) as applied, to be consistent with Ohio law.

In *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (Ohio 1975), the Ohio Supreme Court considered a restrictive employment covenant which forbid a veterinarian from practicing his profession, for three years, within thirty miles of his former employer. The trial court had upheld the contract, but had limited its enforcement to an eighteen-mile radius. The Court of Appeals had reversed, finding the covenant an unreasonable restraint of trade. The *Raimonde* court's response was to adopt a rule of reasonableness, allowing the trial court to evaluate all of the factors and to "fashion a contract reasonable between the parties, in accord with their intention at the time of contracting." 42 Ohio St.2d at 25–26, 325 N.E.2d at 547. After holding that a trial court may enforce a covenant "to the extent necessary to protect an employer's legitimate interests," the Supreme Court remanded the case in order that the trial court re-evaluate its initial ruling under the new standard. 42 Ohio St.2d at 28, 325 N.E.2d at 548.

---

**7.** The Court notes that, after upholding the restrictive covenant under the Valentine Act, the *C.K. & J.K., Inc.* court summarily held that the covenants were not contrary to Ohio public policy. 63 Ohio St.2d at 206, 407 N.E.2d at 510.

*Raimonde,* while not decided under the Valentine Act, provides considerable insight into the approach of the Ohio courts to restrictive covenants. Like this Court's approach to Section 43(A) under the Sherman Act, *Raimonde* teaches that a restrictive covenant need not be evaluated solely on its face, but rather that it may be tested under a rule of reasonableness, and enforced to the extent necessary to protect the legitimate interests of the contracting parties. For the reasons enunciated in Part 3, Section A, Section 43(A) needs only be enforced to the extent of one-half mile. Accordingly, the Court passes no judgment on the validity of Section 43(A)'s six-mile limitation under the Valentine Act, but finds that this provision is valid, as applied, under the Valentine Act.

### 4. *Injunctive Relief*

Section 43 of the Lease sets forth a number of restrictive covenants, including the six-mile geographic restriction of Section 43(A), the principal focus of this case. *See* Plaintiff's Tr. Exh. 1. Section 43(C) of the Lease provides that "[i]n the event of a breach or threatened breach of any of said covenants, Tenant shall be entitled to injunctive relief and any other appropriate remedy."

■ This contractual provision notwithstanding, Defendants contend that Plaintiff has failed to establish any injury or damage resulting from Defendants' proposed sale of real estate to Toys "R" Us. Defendants' argument bottoms on Plaintiff's admission in its briefs that Toys "R" Us, regardless of the outcome of this lawsuit, will establish a store in the south Dayton area which will compete with Plaintiff's Children's Palace store. This acknowledgement by Plaintiff, used in its briefs to emphasize the reasonableness of enforcement of Section 43(A), is believed by Defendants to indicate that Plaintiff will suffer no competitive injury by virtue of the sale, and that, therefore, Plaintiff is entitled to no relief in this action.

This argument by Defendants is untenable. In bargaining with Defendant South

Towne's predecessors, Plaintiff's corporate predecessor bargained for the right not to have its landlord establish a "copycat" store on any of its premises within a certain distance from the store which Plaintiff would lease for the next 20 years. The value of this promise to Plaintiff, while hard to quantify, is believed by commentators to be reflected in the economic value of its lease. M. Handler and D. Lazaroff, Restraint of Trade and the Restatement (Second) of Contracts, 57 N.Y.U.L.Rev. 669, 680 (1982). As a means of guaranteeing its landlord's promises, Plaintiff's predecessor obtained Section 43(C) of the Lease, the right for it to obtain injunctive relief in the event of breach or threatened breach by the Landlord. Assuming *arguendo* that the four requirements for injunctive relief were not present, Defendants have no basis for arguing that the contractual relief of Section 43(C), in the form of an injunction, should not be forthcoming in this case.

■ The Court concludes, furthermore, that the four requirements for injunctive relief are indeed present in this case. *See Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985). Plaintiff has prevailed on the merits, an injunction would not cause substantial harm to Defendants or to others, and the issuance of an injunction would not be detrimental to the public interest. As for the requirement of irreparable injury, Defendants' proposed sale to Toys "R" Us, in violation of Section 43(A), of a parcel approximately one-half mile from Plaintiff's store would deprive Plaintiff of the very benefit of the Lease for which its predecessor had bargained. As damages are inadequate and impracticable to redress Plaintiff's loss of the bargain in the event of Defendants' breach—a fact recognized in Section 43(C) of the Lease—the Court finds that Plaintiff is entitled to an injunction preventing Defendants' proposed sale of real estate to Toys "R" Us. *See Borman's, Inc. v. Great Scott Super Markets, Inc.,* 433 F.Supp. 343, 347 (damages sustained by tenant if restrictive covenant breached, in terms of potential lost good

will and lost customers, difficult to ascertain, even if immediate lost profits could be calculated). The difficulty in quantifying the loss to the economic value of Plaintiff's Lease upon the breach of its restrictive covenant is all the more reason that an injunction should issue.

### IV. *Summary*

In conclusion, judgment is entered for Plaintiff and against Defendants on Plaintiff's Complaint. Section 43(A) of the Lease is declared lawful and enforceable as applied in this case. Defendants are permanently enjoined from violation of Section 43(A) to the extent of a one-half mile radius from the South Towne Centre shopping center. Judgment is entered for Plaintiff and against Defendants on Defendants' counterclaim for a declaratory judgment as to the invalidity of Section 43(A) on the basis of state or federal law and/or public policy. Each side is to bear its own costs in this action.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.